1  Joel E. Elkins (SBN 256020)
   jelkins@weisslawllp.com
2  **WEISSLAW LLP**
   611 Wilshire Blvd., Suite 808
3  Los Angeles, CA 90017
   Telephone: 310/208-2800
   Facsimile:  310/209-2348
4
5  *Attorneys for Plaintiff*

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  ERIC SABATINI,                        )  Case No.
                                          )
12              Plaintiff,                )
                                          )  **COMPLAINT FOR**
13                                        )  **VIOLATIONS OF THE**
        vs.                               )  **FEDERAL SECURITIES**
14                                        )  **LAWS**
                                          )
15  VEONEER, INC., ROBERT W.              )  JURY TRIAL DEMANDED
    ALSPAUGH, JAN CARLSON,                )
16  JAMES M. RINGLER, MARK                )
    DURCAN, JONAS SYNNERGREN,             )
17  KAZUHIKO SAKAMOTO, and                )
    WOLFGANG ZIEBART,                     )
18                                        )
                                          )
19              Defendants.               )
                                          )
20  _____  )
21

22

23

24      Plaintiff Eric Sabatini ("Plaintiff"), on behalf of himself and all others similarly

25  situated, upon information and belief, including an examination and inquiry conducted

26

27

28
                                    - 1 -
    COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.    This is an action brought by Plaintiff against Veoneer, Inc. ("Veoneer" or the "Company") and the members of Veoneer's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Veoneer will be acquired by QUALCOMM Incorporated ("Qualcomm") and SSW Investors LP ("SSW") through SSW's subsidiaries SSW HoldCo LP ("HoldCo") and SSW Merger Sub Corp ("Merger Sub") (the "Proposed Transaction").

2.    On October 4, 2021, Veoneer, Qualcomm and SSW issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 4, 2021 (the "Merger Agreement") to sell Veoneer to SSW and Qualcomm. Under the terms of the Merger Agreement, Veoneer stockholders will receive $37.00 in cash for each share of Veoneer common stock they own (the "Merger Consideration").   Concurrently with the execution of the Merger Agreement, Qualcomm, HoldCo and Merger Sub entered into an Investment and Separation Matters Agreement pursuant to which, SSW will sell Veoneer's Arriver Business to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Qualcomm and retain Veoneer's Tier-1 supplier businesses.  The Proposed Transaction is valued at approximately $4.5 billion.

3.      On November 15, 2021, Veoneer filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Veoneer stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and Rothschild & Co US Inc. ("Rothschild"); and (ii) Morgan Stanley's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, Veoneer's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.      The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains and operates manufacturing facilities in this District; and (ii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Veoneer.

9.      Defendant Veoneer is a Delaware corporation, with its principal executive offices located at Klarabergsviadukten 70, Section C6, Box 13089, SE-103 02, Stockholm, Sweden and manufacturing facilities located in Goleta, California.  The Company is a worldwide leader in automotive technology.  Veoneer's common stock trades on the New York Stock Exchange under the ticker symbol "VNE."

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

10.     Defendant Robert W. Alspaugh ("Alspaugh") has been a director of the Company since June 29, 2018.

11.     Defendant Jan Carlson ("Carlson") has been Chairman of the Board since June 29, 2018 and President, Chief Executive Officer ("CEO"), and a director of the Company since April 1, 2018.

12.     Defendant James M. Ringler ("Ringler") has been a director of the Company since April 1, 2018.

13.     Defendant Mark Durcan ("Durcan") has been a director of the Company since June 29, 2018.

14.     Defendant Jonas Synnergren ("Synnergren") has been a director of the Company since June 29, 2018.

15.     Defendant Kazuhiko Sakamoto ("Sakamoto") has been a director of the Company since June 29, 2018.

16.     Defendant Wolfgang Ziebart ("Ziebart") has been a director of the Company since June 29, 2018.

17.     Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

### OTHER RELEVANT ENTITIES

18.     Qualcomm is a Delaware corporation with its principal executive offices located at 5775 Morehouse Drive, San Diego, California 92121.  Qualcomm is a global leader in the development and commercialization of foundational technologies for the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

wireless industry.  Qualcomm's technologies and products are used in mobile devices and other wireless products, and are sold across industries and applications beyond mobile handsets, including automotive and the internet of things ("IoT"), among others.  Qualcomm's common stock trades on the Nasdaq Global Select Market under the ticker symbol "QCOM."

19.     SSW is a Delaware limited partnership based in New York that invests in high-quality businesses and collaborates with partners to create enduring value for all stakeholders.  SSW focuses on businesses that consistently invest in their products and people, have built their reputations based on the quality of the goods they produce or services they provide, who have demonstrated the capacity for innovation and constant improvement, and who prioritize the interests of all stakeholders, including employees, customers, owners, and the communities in which the businesses operate.

20.     HoldCo is a Delaware limited partnership and a subsidiary of SSW.

21.     Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of SSW.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

22.     Incorporated in 2017, the Company functions as a holding corporation and owns two principal subsidiaries, Veoneer AB and Veoneer US, Inc.  Veoneer is a global technology leader in the design, development, manufacture and sale of automotive safety electronics.  Veoneer's ambition is to be a leading system supplier for Advanced-

- 6 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Driver Assistance Systems  and Highly Automated Driving solutions, which it refers to as "Collaborative Driving," and Automated Driving solutions, and to be recognized as a market leader in automotive safety electronics products.

23.     As of December 31, 2020, Veoneer has six manufacturing sites, operates in 11 countries and its customers include most of the world's largest car manufacturers. Veoneer's sales in 2020 were $1.37 billion, approximately 45% of which consisted of Active Safety products, approximately 49% of which consisted of Restraint Control Systems and approximately 6% of which consisted of Brake Systems products and other brake control electronic control units.

24.     On July 23, 2021, Veoneer announced its second quarter 2021 financial results.  Net sales were $398 million, increased 116% from $184 million in the second quarter of 2020.  Operating cash flow was a loss of $69 million, improved from a loss of $107 million in the second quarter of 2020.  Reflecting on the Company's results and looking towards the future, defendant Carlson stated:

> For the quarter, I was pleased with Veoneer's performance during a challenging period.  Despite the uncertainty created by supply disruptions, the COVID-19 pandemic and sequentially lower light vehicle production leading to lower sales, Veoneer improved its gross profit and operating loss as well as its cash flow.  These improvements were achieved through the progress of our on-going market adjustment initiatives, and we expect continuous progress throughout 2021 as sales increases and the results of

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

the efficiency programs are expected to keep our costs at near planned levels.

Planned launches are on track, although the positive volume effects are somewhat held back by the short-term fluctuations in OEM demand. During the quarter we had five key launches, four out of which were Active Safety launches that will start to contribute to our expected strong organic sales growth in the quarters and years to come.  The launch of the Geely EMA was especially significant for Veoneer as we are a full system and integration supplier to the vehicle.  This is a flagship program for our Company, highlighting the strength of our vision, radar, ECU and software capabilities.  It further highlights the current momentum we have in China where among other customer wins we signed yet another new customer for our vision technology.

Our order intake developed better in the quarter than what we expected, due in part to new opportunities that we were able to capture and partly orders expected in the third quarter materializing already in the second quarter.  We won orders across most products areas, highlighting the strength of our current product portfolio.  With this positive development we are well on track to reach higher order levels in 2021 as compared to 2020.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The first Arriver perception and drive policy software running on the Qualcomm Snapdragon Ride platform has now been demonstrated in-vehicle to potential customers with encouraging initial feedback, a true milestone. During the quarter the Volvo XC40 Recharge, which runs the current generation of Arriver software, was picked as "Top Safety Pick+" by the Insurance Institute for Highway Safety in the United States, another proof point that we are on track to create a leading global challenger for Active Safety systems and software.

These developments are the result of the strong execution of the entire Veoneer team and I would like to take this opportunity to thank all of Veoneer's associates for their focus and persistence in these volatile times.

25.     On October 26, 2021, Veoneer announced its third quarter 2021 financial results. Net sales were $391 million, increased from $371 million in the third quarter of 2020. Operating loss was $89 million, improved from operating loss of $103 million in the corresponding quarter of 2020. Reflecting on the Company's results and looking towards the future, defendant Carlson stated:

Veoneer showed strong operational performance during the third quarter. Despite a sequential drop in the light vehicle production of 12%, our net sales were essentially flat, sequentially. Through our market adjustment initiatives, we also managed to improve our gross profit and reduce our operating loss sequentially and year-over-year. I would like to direct my

- 9 -

sincere thanks to the entire Veoneer team who continues to execute in these difficult market conditions and rapidly changing and uncertain environment.

* * *

We continue to see strong momentum for our technologies and products. During the quarter the high-volume Subaru Forrester was launched with our stereo vision camera.  We also launched our 9th customer for Monovision, we announced that we are delivering key technologies for Mercedes S-Class upgrade to level 3 capabilities, and we had the first public demonstration of the Arriver-Snapdragon Ride solution to great feedback at the IAA Show in Munich.

**The Proposed Transaction**

26.    On October 4, 2021, Veoneer, Qualcomm and SSW issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

San Diego, New York and Stockholm, October 4, 2021 - Qualcomm Incorporated (NASDAQ: QCOM) and SSW Partners, a New York-based investment partnership ("SSW Partners"), today announced they have reached a definitive agreement to acquire Veoneer, Inc. (NYSE: VNE; SSE: VNE SDB) for $37.00 per share in an all-cash transaction, representing a total equity value for Veoneer of $4.5 billion.  Veoneer has terminated its prior acquisition agreement with Magna International Inc.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

("Magna") and canceled its October 19, 2021 special meeting that was previously scheduled to approve that agreement.

At closing, SSW Partners will acquire all of the outstanding capital stock of Veoneer, shortly after which it will sell the Arriver business to Qualcomm and retain Veoneer's Tier-1 supplier businesses.   SSW Partners will lead the process of finding strong, long-term strategic partners.  This transaction structure facilitates the long-term success of all Veoneer's businesses.

Having already demonstrated a successful partnership with Arriver, Qualcomm believes that the Arriver business will thrive at Qualcomm. Upon close of the transactions, Qualcomm will incorporate Arriver's Computer Vision, Drive Policy and Driver Assistance assets into its leading Snapdragon Ride™ Advanced Driver Assistance Systems (ADAS) solution.  This will augment Qualcomm's ability to deliver an open and competitive ADAS platform for automakers and Tier-1s at scale.

SSW Partners will work with Veoneer's management to ensure the pursuit of Veoneer's existing business plan and to identify strong, long-term strategic partners for the Restraint Control Systems (RCS) and Active Safety businesses.   The principals of SSW Partners have substantial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

investing, operating and transaction experience internationally, as well as a track record of success in collaborating with management teams in multiple geographies and industries.  They are experienced investors and advisors in both Europe and the automotive sector and will prioritize the smooth continuation of business activities for the customers and employees of the RCS and Active Safety businesses.  SSW Partners' investment in Veoneer will represent its first capital commitment as a partnership since its founding at the beginning of the year.

"Qualcomm is the natural owner of Arriver.  By integrating these assets, Qualcomm accelerates its ability to deliver a leading and horizontal ADAS solution as part of its digital chassis platform," said Cristiano Amon, president and CEO of Qualcomm Incorporated.  "We believe that this transaction and structure benefits both Qualcomm's and Veoneer's shareholders, positions all of Veoneer's businesses for success and provides a compelling opportunity to customers and employees."

"This transaction creates superior value for our shareholders," said Jan Carlson, Chairman, President and CEO of Veoneer.  "It also provides attractive opportunities to our Arriver team at Qualcomm and allows our other businesses to find long-term industrial partners where they can continue to develop."

- 12 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Mr. Carlson continued, "Our board and management team remain focused on delivering on our objectives, driving continuous improvements across the organization and launching new technologies and programs for our customers.  Despite significant industry-wide challenges, our team has done an outstanding job positioning Veoneer for success, building on our leading ecosystem of partners, cutting-edge technology and a strong order book."

"We are excited to partner with Qualcomm to acquire Veoneer," said Antonio Weiss and Josh Steiner of SSW Partners.  "While Qualcomm focuses on the Arriver business, we will focus on finding strong, long-term strategic homes for the rest of Veoneer's businesses – we are committed to ensuring that Veoneer's employees prosper, the businesses continue to innovate and grow and customers continue to have uninterrupted access to the outstanding service and quality for which Veoneer is known.  We have high regard for Veoneer's management team and look forward to partnering with them to ensure a successful outcome for all stakeholders."

**Transaction Details**

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The cash purchase price of $37.00 per share represents an 18% premium to Veoneer's prior agreement with Magna, and an 86% premium to the unaffected share price prior to the announcement of the Magna agreement. The transaction has been approved by the boards of directors of Qualcomm and Veoneer and is subject to regulatory approvals including under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 in the United States, certain European foreign direct investment approvals, approval by Veoneer stockholders and other customary conditions. The transaction is expected to close in 2022.

The announcement follows the Veoneer board's determination, with the assistance of its financial and legal advisors, that a formal acquisition offer Veoneer received from Qualcomm and SSW Partners on October 1, 2021 constitutes a "Superior Proposal" under the terms of Veoneer's merger agreement with Magna dated July 22, 2021. Magna has waived its right to submit a revised proposal to Veoneer.

Centerview Partners LLC and Evercore Group L.L.C. acted as financial advisors to Qualcomm and Paul, Weiss, Rifkind, Wharton & Garrison LLP acted as legal counsel. Davis Polk & Wardwell acted as legal counsel to SSW Partners. Morgan Stanley and Rothschild & Co acted as financial

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

advisors to Veoneer, and Skadden, Arps, Slate, Meagher & Flom LLP acted as legal counsel.

**Insiders' Interests in the Proposed Transaction**

27.     Veoneer insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Veoneer.

28.     Notably, pursuant to the Merger Agreement, all outstanding Company options, restricted stock units ("RSUs"), and performance-based restricted stock units ("PSUs") will vest and convert into the right to receive cash payments.  The following table summarizes the value of Company options, RSUs, and PSUs that Company insiders stand to receive if they are terminated upon closing of the merger:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Company Options[1] | | Company RSUs[2] | | Company PSUs[2] | |
|---|---|---|---|---|---|---|
| | Shares (#) | Value ($) | Shares (#) | Value ($) | Shares (#) | Value ($) |
| Jan Carlson | | | | | | |
| President and Chief Executive Officer | 43,959 | 248,602 | 17,722 | 655,714 | 77,933 | 2,883,521 |
| Lars Sjöbring | | | | | | |
| EVP, Legal Affairs, General Counsel | — | — | 13,632 | 504,384 | 22,573 | 835,201 |
| Matthias Bieler | | | | | | |
| EVP, Vision & DMS | — | — | 20,546 | 760,202 | 33,957 | 1,256,409 |
| Robert Bisciotti | | | | | | |
| EVP, RCS | — | — | 10,684 | 395,308 | 9,721 | 359,677 |
| Steven Jenkins | | | | | | |
| EVP and Chief Technology Officer | — | — | 7,394 | 273,578 | 4,918 | 181,966 |
| Thomas Jönsson | | | | | | |
| EVP, Communications and Investor Relations | 5,656 | 15,554 | 9,542 | 353,054 | 15,801 | 584,637 |
| Mikael Landberg | | | | | | |
| EVP, Human Resources | — | — | 10,354 | 383,098 | 17,113 | 633,181 |
| Christer Lundström | | | | | | |
| EVP, Operations & Quality | — | — | 17,810 | 658,970 | 15,184 | 561,808 |
| Ray Pekar | | | | | | |
| Chief Financial Officer and EVP, Finance | 9,582 | 67,126 | 11,343 | 419,691 | 10,609 | 392,533 |
| Christine Rankin | | | | | | |
| SVP, Finance and Principal Accounting Officer | — | — | 7,617 | 281,829 | 6,413 | 237,281 |
| Christoph Schmickler | | | | | | |
| SVP, ADAS & ECU | — | — | 6,476 | 239,612 | 5,877 | 217,449 |
| Christopher Van Dan Elzen | | | | | | |
| EVP, Radar | — | — | 10,684 | 395,308 | 9,721 | 359,677 |
| Seven (Xi) Zhang[3] | | | | | | |
| Former Executive Officer EVP, Business Unit China | — | — | 7,814 | 289,118 | 6,610 | 244,570 |

29.     Moreover, if they are terminated in connection with the Proposed Transaction, Veoneer's non-named executive officers stand to receive substantial cash severance payments, as set forth in the following table:

- 16 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Cash Severance[2] ($) | Differential Payment for Non-Compete[3] ($) | Cash Pro Rata Bonus for Year of Termination[4] ($) |
|---|---|---|---|
| Robert Bisciotti | | | |
| EVP, RCS | 690,000 | 276,000 | 207,000 |
| Steven Jenkins[5] | | | |
| EVP and Chief Technology Officer | 193,290 | 115,974 | 86,981 |
| Thomas Jönsson | | | |
| EVP, Communications and Investor Relations | 474,989 | 189,995 | 110,831 |
| Mikael Landberg | | | |
| EVP, Human Resources | 481,015 | 192,406 | 112,237 |
| Christer Lundström | | | |
| EVP, Operations & Quality | 400,793 | 160,317 | 120,238 |
| Ray Pekar | | | |
| Chief Financial Officer and EVP Finance | 600,000 | 240,000 | 180,000 |
| Christine Rankin | | | |
| SVP, Finance and Principal Accounting Officer | — | — | 56,850 |
| Christoph Schmickler | | | |
| SVP, ADAS & ECU | 363,699 | 145,480 | 84,863 |
| Christopher Van Dan Elzen | | | |
| EVP, Radar | 525,000 | 210,000 | 157,500 |
| Seven (Xi) Zhang[6] | | | |
| Former Executive Officer EVP Business Unit China | 725,868 | 290,347 | 217,760 |

30.     Further, if they are terminated in connection with the Proposed Transaction, Veoneer's named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Pension/ NQDC ($)[3] | Perquisite/ Benefits ($) | Total ($)[4] |
|---|---|---|---|---|---|
| Jan Carlson | 11,248,855 | 3,539,235 | — | — | 14,788,090 |
| Lars Sjöbring | 2,462,465 | 1,339,585 | — | — | 3,802,050 |
| Matthias Bieler | 1,531,000 | 2,016,611 | — | — | 3,547,611 |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**The Proxy Statement Contains Material Misstatements or Omissions**

31.   The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Veoneer's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32.   Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Morgan Stanley and Rothschild; and (ii) Morgan Stanley's potential conflicts of interest.

*Material Omissions Concerning Morgan Stanley's and Rothschild's Financial Analyses*

33.   The Proxy Statement omits material information regarding Morgan Stanley's and Rothschild's financial analyses.

34.   The Proxy Statement describes Morgan Stanley's and Rothschild's fairness opinions and the various valuation analyses they performed in support of their opinions.  However, the description of Morgan Stanley's and Rothschild's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Veoneer's public stockholders

- 18 -

are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's and Rothschild's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

35.    With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the comparable companies observed by Morgan Stanley in the analysis.

36.    With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal values for Veoneer; (ii) quantification of the inputs and assumptions underlying the discount rate range of 10.4% to 11.9%; (iii) the Company's net debt; and (iv) the number of fully diluted shares of Company stock.

37.    With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analyses, the Proxy Statement fails to disclose: (i) the individual price targets observed in the analyses; and (ii) the sources thereof.

38.    With respect to Rothschild's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of the terminal period unlevered after-tax free cash flows used to calculate the terminal value for the Company; (ii) quantification of the terminal values for Veoneer; (iii) quantification of the inputs and assumptions underlying the discount rate range of 10.5% to 12.5%; (iv) the Company's net debt; and (v) the number of fully diluted shares of Company stock.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

39.    With respect to Rothschild's per share price target analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

40.    With respect to Rothschild's premiums paid analysis, the Proxy Statement fails to disclose the premia observed for each transaction.

41.    The omission of this material information renders the statements in the "Opinions of Veoneer's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest***

42.    The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

43.    For example, the Proxy Statement fails to disclose the timing and nature of the past services Morgan Stanley and/or its affiliates provided to Qualcomm.

44.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

45.    The omission of this material information renders the statements in the "Opinions of Veoneer's Financial Advisors" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

46.    The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Veoneer will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

## Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

47.   Plaintiff repeats all previous allegations as if set forth in full.

48.   During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

49.   By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Morgan Stanley and Rothschild, and Morgan

- 21 -

Stanley's potential conflicts of interest.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

51.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

52.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

### COUNT II

**Claims Against the Individual Defendants for**

**Violations of Section 20(a) of the Exchange Act**

53.     Plaintiff repeats all previous allegations as if set forth in full.

54.     The Individual Defendants acted as controlling persons of Veoneer within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Veoneer, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making

- 22 -

of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.   The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.   They were, thus, directly involved in the making of the Proxy Statement.

57.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.   The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

58.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

59.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Veoneer's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Veoneer, and against defendants, as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Veoneer stockholders;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

- 24 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

E.    Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 30, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
           -and-
Richard A. Acocelli
305 Broadway, 7th Floor
New York, NY  10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

- 25 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS